RESPONDENT PRO SE
Narles W. Coleman
Chicago, Illinois

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Seth T. Pruden, Staff Attorney
Indianapolis, Indiana

FILED

Jan 24 2017, 12:59 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 98S00-1301-DI-52

IN THE MATTER OF:

NARLES W. COLEMAN,

*Respondent.*

Attorney Discipline Action
Hearing Officer Jeryl F. Leach

**January 24, 2017**

**Per Curiam.**

We find that Respondent, Narles Coleman, engaged in numerous acts of attorney misconduct in connection with his representation of a client and subsequent civil suit against that client, and by committing domestic battery against his wife. For this misconduct, we conclude that Respondent should be suspended from the practice of law in this state for at least two years without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Amended Verified Complaint for Disciplinary Action." Respondent's 2002 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

The Commission filed a two-count "Amended Verified Complaint for Disciplinary Action" against Respondent on July 14, 2014. Following a hearing, the hearing officer filed his report on September 30, 2016. Respondent belatedly filed a "response" to the hearing officer's report on November 7, 2016.[1]

Count 1. In 2006, "Client" was charged with class C felony child molestation. Shortly thereafter, Client received a letter from Respondent soliciting employment, stating he could give the best possible representation for a reasonable fee. Respondent falsely represented that he was associated with "The Cochran Firm," originally founded by Johnnie Cochran. In fact, Respondent had minimal experience in criminal law and no experience in child molesting cases. Client agreed to hire Respondent for a flat fee of $4,000, which Client paid in part. Over the next several months, Client had difficulty communicating with Respondent. Respondent failed to keep Client informed about events in the case; made decisions about the case without consulting Client; failed to appear at a pretrial conference; misinformed Client that results of a polygraph would not be shown to the prosecutor; deceived Client into signing a new fee agreement calling for a fee of $200 per hour; and negotiated a plea agreement without consulting Client, despite Client's prior instructions that he did not want to enter a plea agreement. Client continued to maintain his innocence and refused to sign the plea agreement.

Following these events, Client fired Respondent and hired new counsel. Respondent did not withdraw his representation or forward a copy of Client's file to new counsel until after a show cause proceeding was initiated against him. The criminal charge against Client ultimately was dismissed.

---

[1] Where no party files a petition for review or brief on sanctions challenging the hearing officer's findings, "we accept and adopt those findings but reserve final judgment as to misconduct and sanction." Matter of Levy, 726 N.E.2d 1257, 1258 (Ind. 2000). Where review is timely sought, we review *de novo* all matters presented to the Court, with the hearing officer's findings receiving emphasis due to the unique opportunity for direct observation of witnesses. *See* Matter of Thomas, 30 N.E.3d 704, 708 (Ind. 2015). In this case, each standard of review leads us to the same result.

Respondent sent Client a bill for over $9,000 and filed a civil suit to collect the balance owing, including demands for interest of close to 25% per annum. The bill was predicated on the new fee agreement Respondent had induced Client to sign under false pretenses and included inflated hourly billing for various events in Client's case for which Respondent performed minimal or no work and various other activities of little or no value to Client's case. Respondent also sought to collect from Client additional sums for time allegedly spent, and expenses allegedly incurred, in connection with withdrawing from Client's case and filing the civil suit against Client. Client filed a counterclaim. At a deposition of a witness Respondent named, he and the witness concealed the fact that she was his wife. The trial court eventually entered judgment in favor of Client for close to $11,000. Respondent appealed and filed a motion to compel the court reporter to complete the transcript, even though he had not made payment arrangements. His appeal was dismissed for failure to make payment arrangements.

Count 2. In October 2012, Respondent was charged with felony and misdemeanor counts of domestic battery stemming from allegations that Respondent struck his wife in the presence of four children. Following a jury trial in July 2013, Respondent was convicted of domestic battery as a class A misdemeanor.

The hearing officer found the following facts in aggravation: (1) Respondent's acts of misconduct were numerous, continuing, and impacted many people; (2) Respondent's conduct resulted in injuries to Client, the public, the legal system, and the legal profession; (3) Respondent's misconduct involved intentional, knowing, and negligent actions; (4) Respondent's misconduct resulted in both actual and potential harm; and (5) the facts of this case reflect a long-term pattern of serious rule violations. The hearing officer found Respondent's lack of prior discipline to be a fact in mitigation.

**Discussion and Discipline**

We concur in the hearing officer's findings of fact and conclude that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.1: Failing to provide competent representation.

1.2(a):  Failing to abide by a client's decisions concerning the objectives of representation.

1.3:  Failing to act with reasonable diligence and promptness.

1.4(a)(3):  Failing to keep a client reasonably informed about the status of a matter.

1.4(b):  Failing to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

1.5(a):  Making an agreement for, charging, or collecting an unreasonable fee.

1.5(b):  Failing to communicate the basis or rate of the fee and expenses for which a client will be responsible before or within a reasonable time after commencing the representation.

1.8(a):  Entering into a business transaction with a client (a revised fee agreement) unless the transaction is fair and reasonable, the terms are fully disclosed in writing, the client is given written advice of the desirability of seeking and the opportunity to seek the advice of independent counsel, and the client consents in writing to the transaction.

1.16(d):  After the termination of representation, failing to protect a client's interests and failing promptly to return to a client case file materials to which the client is entitled.

3.1:  Asserting a position for which there is no non-frivolous basis in law or fact.

3.2:  Failing to expedite litigation consistent with the interests of a client.

3.3(a)(3):  Offering evidence the lawyer knows to be false, and failing to take reasonable remedial efforts after becoming aware that a witness called by the lawyer offered false material evidence.

3.4(c):  Knowingly disobeying an obligation under the rules of a tribunal.

4.1(a):  Knowingly making a false statement of material fact to a third person in the course of representing a client.

7.2(b) (2007):  Using a public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.

7.2(c)(3) (2007):  Making a statement intended or likely to create an unjustified expectation.

7.3(c) (2007):  Solicitation of professional employment without the words "Advertising Material."

8.4(b): Committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

Our analysis of appropriate discipline entails consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in mitigation and aggravation. *See* Matter of Newman, 958 N.E.2d 792, 800 (Ind. 2011).

Weighing in Respondent's favor are his lack of prior discipline and the fact that most of the misconduct at issue in this case involved a single client. That said though, Respondent's misconduct with respect to Client was wide-ranging, pervasive, retaliatory, and deceptive at multiple junctures. Respondent used his wife in an attempt to deceive Client in subsequent litigation and later committed domestic battery against his wife. Respondent's systemic malfeasance in connection with his representation of Client, his criminal conduct, and his less-than-effective self-representation during most of these disciplinary proceedings reflect exceedingly poorly on his fitness to practice law.

After careful consideration of this matter, we conclude that Respondent should be suspended for a period of at least two years, after which he may be reinstated only after proving by clear and convincing evidence his remorse, rehabilitation, and fitness to practice. *See* Admission and Discipline Rule 23(18)(b) (2017).

## Conclusion

Respondent already is under an order of suspension for dues nonpayment and for failing to fulfill his continuing legal education requirements. For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than two years, without automatic reinstatement, effective from the date of this opinion. Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline

Rule 23(26).  At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, cures the causes of all suspensions then in effect, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18).

The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.